IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

THE ESTATE OF WILLIAM      )
CHAMPION,                  )
                           )
        Plaintiff,         )
                           )
v.                         )    CIVIL ACTION NO. 97-JEO-1249-E
                           )
ELEANOR CHAMPION,          )
                           )
        Defendant.         )

**ENTERED**

MAY 1 3 1999

### MEMORANDUM OPINION

In this action, The Estate of William Barton Champion ("the plaintiff" or the "Estate") asserts a claim against Eleanor Champion ("the defendant") pursuant to 26 U.S.C. § 2206[1] that it is entitled to recover approximately $43,463.00 and costs for taxes incurred on insurance benefits paid to the defendant. The complaint also contains a claim wherein the plaintiff seeks to require the defendant to transfer certain real property to the plaintiff pursuant to a divorce settlement agreement ("Settlement Agreement"

---

[1] 26 U.S.C § 2206 provides:

Unless the decedent directs otherwise in his will, if any part of the gross estate on which tax has been paid consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the taxable estate. If there is more than one such beneficiary, the executor shall be entitled to recover from such beneficiaries in the same ratio. In the case of such proceeds receivable by the surviving spouse of the decedent for which a deduction is allowed under section 2056 (relating to marital deduction), this section shall not apply to such proceeds except as to the amount thereof in excess of the aggregate amount of the marital deductions allowed under such section.

50

or the "agreement") executed by William Barton Champion ("Barton Champion") and the defendant. The defendant has filed a counterclaim demanding that the plaintiff pay $301,000.00, plus interest and costs, purportedly due pursuant to the Settlement Agreement and $1,463.52 that was held by Barton Champion and the defendant in a joint bank account at the time of Barton Champion's death.

Various motions are presently before the court. These include: (1) the plaintiff's motion for summary judgment (doct. 14); (2) the plaintiff's supplemental motion for summary judgment (doct. 28); (3) the defendant's motion for partial summary judgment (doct. 29); (4) the defendant's motion to strike a purported will of William Barton Champion (doct. 30); and, (5) the defendant's motion to strike the affidavit of Greg Burleson, the issuing insurance agent for the policy that is the basis of this suit (doct. 40).

## I. PROCEDURAL HISTORY

On April 21, 1997, the plaintiff filed a two-count complaint in Calhoun County, Alabama Circuit Court against the defendant. In the first count, the plaintiff asserts, pursuant to 26 U.S.C. § 2206, that the estate is entitled to recover approximately $43,463.00 and costs for taxes incurred on insurance benefits paid to the defendant. The second count is a claim wherein the plaintiff

2

seeks to require the defendant to transfer certain real property to the plaintiff pursuant to the divorce settlement. (Doct. 1, Ex. B). The case was removed to federal court by the defendant on May 21, 1997. (Doct. 1). The defendant filed her answer on June 5, 1997. (Doct. 3).

The defendant filed a motion to amend her answer to present a counterclaim. (Doct. 12). Her motion was granted and her counterclaim was filed on January 28, 1998. (Doct. 17). There are two counts: the first asserts that the estate of Barton Champion owes her $301,000.00 under the divorce settlement and the second asserts that the estate owes her $1,463.52 that was in a bank account jointly held by Barton Champion and the defendant at the time of his death. (Doct. 17).

The plaintiff filed a motion for summary judgment as to the second count of the complaint. (Doct. 14). A hearing was conducted on the plaintiff's motion for summary judgment as to count two of the complaint. At the conclusion of the hearing, the court afforded the parties additional time to file any other dispositive motions in this case, as the facts and questions of law relating to the individual counts of the complaint and counterclaim were related.

On October 1, 1998, the plaintiff filed a supplemental motion for summary judgment as to each and every count in the complaint

3

and the counterclaim. (Doct. 28). The defendant and counter claimant, Eleanor Champion, filed a motion for summary judgment as to counts one and two of the counterclaim and as to count one of the plaintiff's complaint on October 2, 1998. (Doct. 29).

The plaintiff filed a motion to strike a document purported to be a "will" of Barton Champion offered in support of the defendant's motion for partial judgment. (Doct. 30 (motion); Doct. 37, Ex. A (document)). The defendant filed a motion to strike the affidavit of Greg Burleson that was offered by the plaintiff in support of the motion for summary judgment. (Doct. 40).

The parties filed a document captioned "Stipulations" concerning many of the factual matters presented. As a part of the stipulations, the parties included appropriate supporting documentation. (Doct. 34).

The pending motions were set for a hearing on December 21, 1998. The order setting the hearing on the motions requested that the parties consider the application of *Moore v. Pennsylvania Castle Energy Corporation*, 89 F.3d 791 (11th Cir. 1996), dealing with the use of extrinsic evidence in determining whether there is a latent ambiguity in the Settlement Agreement that gives rise to this action. (Doct. 38).

4

At the hearing, the plaintiff objected to the affidavit of John Owens, which was submitted by the defendant and which relates a conversation Owens had with Barton Champion prior to Champion's death. (*See* Doct. 36 (Owens affidavit)). After affording the parties the opportunity to present evidence and oral arguments on the motions, the court informed them that the matters would be taken under submission. Neither party presented any testimony at the hearing.

Subsequent to the hearing, the court noted that affidavits submitted by the defendant (doct. 37), John Owens (doct. 36), and Christi Ayers (doct. 35) were not original documents. The court allowed the parties to submit original affidavits for consideration in this matter. The parties have filed original affidavits of the defendant (docts. 46 and 47), John Owens (doct. 48), and Christi Ayers (doct. 45).

## II. FACTUAL BACKGROUND

Barton Champion and the defendant were married on April 30, 1976, in Heflin, Alabama. American International Life Assurance Company ("AIL") issued Barton Champion a $100,000 five-year renewable term life insurance policy on February 20, 1986. It was last renewed on February 20, 1996. The defendant was the beneficiary on the policy. (Doct. 34, Ex. B).

Barton Champion applied for a $500,000.00 life insurance policy with the Federal Kemper Life Assurance Company ("Kemper") on December 13, 1994. He submitted his application with a local agent named Gregory Burleson. The application designated Barton Champion's mother, Alline Champion, and his then wife, the defendant, as the beneficiaries. The defendant was designated to receive 60% of the benefits ($300,000.00) and Alline Champion was to receive 40% of the benefits ($200,000.00). Contingent beneficiaries were named to receive equal portions of any available benefits. The application was approved and the policy became effective January 9, 1995. (Doct. 34, Ex. A).

Barton Champion and the defendant were divorced pursuant to an April 17, 1995, order of the Circuit Court of Calhoun County. (Doct. 34, Ex. G). Prior to the divorce, the parties entered into a Settlement Agreement on March 22, 1995. The agreement provides, in pertinent part:

> The Husband agrees to pay the sum of Five Hundred Sixty Three Thousand, Forty Two Dollars ($563,042.00) to the wife as a property settlement. Said amount shall be reduced by the following items retained by the Wife:

```
Total Lump Sum Settlement                        $ 563,042.00
Less: Twentieth Century IRA Account              $  37,474.00
      Twentieth Century SEP Account              $   3,955.00
      Twentieth Century International
            Equity Account                       $  71,513.00
One half (½) of household furnishings $  20,000.00
```

6

| | | |
|---|---|---|
| Safe Deposit Box Cash | $ | 100.00 |
| Amount to be paid upon final settlement | $ | 100,000.00 |
| Remaining Balance Due in cash payments | $ | 330,000.00 |

The Husband agrees to pay the remaining balance of Three Hundred Thirty Three [sic] Thousand Dollars ($330,000.00) as follows:

> In monthly installments of One Thousand Six Hundred Sixty-Six and 67/100 ($1,666.67). Said payments to began [sic] on the 1st day of October, 1994 and are due and payable on the 1st say [sic] of each month thereafter for a period of 48 months. Thereafter the annual payments shall increase to Twenty Five Thousand ($25,000.) per year or Two Thousand Eighty Three and 33/100 ($2,083.33) until the property settlement is paid in full.

> Husband agrees to execute a Promissory Note to the Wife for the sum of Three Hundred Thirty Thousand Dollars. Should the husband's total income, as listed for federal income tax purposes, whether a single or joint income tax return, drop below $120,000.00, husband shall have the right to reduce the monthly payments to the wife in the proportion of reduction below the $120,000.00 level. The $120,000.00 level is intended to equal 100%, and any total income below that level would be calculated as a percentage and that percentage applied to the monthly payments. It is the intent of the parties to reduce the payments if there is a reduction in income but not reduce the balance of the original note of $330,000.00.

The parties agree to reserve the issue of periodic alimony to insure payment of the property settlement. In case the husband fails to pay the property settlement, it is the parties' intention that the amount due shall revert to alimony. It is also the parties' intention that

7

the husband shall pay the wife an additional amount in order to provide for any income tax consequences she may have, due to the change from property settlement to alimony. The additional amount paid by the husband shall equal the wife's additional tax burden.

The wife agrees to sign a Quitclaim deed to all jointly owned property and release said deed to the husband, at the time of the signing of this agreement.

(Doct. 34, Ex. H, ¶ 7). The agreement also required Barton Champion to maintain a $300,000 insurance policy with his estate as the primary beneficiary and to provide the defendant with an "assignment on the policy to cover any outstanding debt on the property settlement note . . . that remains unpaid." (*Id.*, ¶ 6). The agreement specifically provides:

The Husband agrees to maintain a life insurance policy on his life in the face value of Three Hundred Thousand ($300,000.00). The estate of the husband will be the primary beneficiary and the wife will have an assignment on the policy to cover any outstanding debt on the property settlement note of the husband which remains unpaid. The Wife is to be furnished proof that the life insurance policy is in effect at the time of signing this agreement and that the husband's estate is named as irrevocable beneficiary.

Husband further agrees that upon request, he will furnish evidence of payments of the premium due on said policy, and further that wife is authorized at any time to make an inquiry or be furnished information concerning the status of the policy as to amount of said policy & whether said policy is in force and effect. In addition, husband agrees that the insurance company issuing said policy may furnish notices of non-payment of premium to wife without separate authorization from him. Husband will be allowed to reduce the face amount of insurance

8

from time to time, as long as the minimum face amount
shall always be equal to or greater than the balance on
the property settlement. The Husband further agrees not
to encumber, pledge or borrow against said policy.

(*Id.*, ¶ 6). Barton Champion executed a promissory note setting

forth the periodic payments as required by the divorce agreement.

(Doct. 34, Ex. I).

Barton Champion died on February 26, 1996. At the time of his

death, he did not have in effect an insurance policy naming his

estate as an irrevocable beneficiary. The defendant did not have an

assignment on any policy securing the property settlement debt. She

did file a claim in the Probate Court of Cleburne County concerning

the outstanding indebtedness on April 15, 1996. (Doct. 34, Ex. J).

The plaintiff filed an objection to her claim. (Doct. 34, Ex. K).

The benefits on the Kemper policy were paid on or about August

16, 1996, to the defendant and D. Alline Champion. (Doct. 34, Ex.

L). The defendant received $306,527.85. (Doct. 34, Ex. E.). The

$100,000.00 in benefits on the AIL policy were paid to the

defendant under the terms of that policy. (Doct. 34, Ex. M).

Liberty National paid the defendant $500.00 under the terms of the

policy it had issued. (Doct. 34, Ex. N).

The tax return for Champion's estate was filed on February 15,

1997. The total gross estate was listed as $1,307,896.00. This

9

included $621,380.00 in insurance proceeds payable to the named beneficiaries. (Doct. 34, Ex. F, Schedule D). The debts listed on the return were $331,354.00, which included a $301,000.00 reduction for the "[r]emaining balance due from divorce settlement." (Doct. 34, Ex. F, Schedule K, p. 25). The taxable estate was listed at $900,436.00. (Doct. 34, Ex. F, Form 706, p. 1). The return does not list the real estate that the plaintiff asserts is due under the Settlement Agreement as an asset. It does list the Colonial Bank of Heflin account jointly held by William Barton Champion and the defendant.[2] (Doct. 34, Ex. F, Schedule C, p. 13). According to the return, the estate owes a total of $96,149.00 in federal estate taxes, $43,463.00 of which is purportedly attributable to the defendant.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548,

---

[2] This account is the basis of count two of the counterclaim.

10

91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see Fed. R. Civ. P.* 56(a) and (b). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings.

11

*Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see*

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matusushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable

inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

The questions in this matter revolve around the interpretation of the Settlement Agreement. The plaintiff asserts that the agreement is ambiguous and that extrinsic evidence may be considered. The defendant asserts that the agreement is not ambiguous and that extrinsic evidence should not be considered to determine the intentions of the parties. The parties have stipulated to most of the pertinent facts, leaving the court to interpret the agreement. If the contract is not ambiguous, its interpretation is a matter of law for the court. *Lassiter v. Covington*, 861 F.2d 680, 683 (11th Cir. 1988), *citing Black v. Glass*, 438 So. 2d 1359, 1367 (Ala. 1983). As is fully discussed below, the court finds that the agreement is not ambiguous and the matter may appropriately be resolved on the motions for summary judgment concerning the issues of liability.

## IV. EVIDENTIARY OBJECTIONS

Besides the stipulations of the parties and the supporting documents, the parties have submitted a number of affidavits. The

14

plaintiff has submitted the affidavit of Gregory Burleson. (Doct. 28, Ex. A, Burleson Affidavit). The defendant has filed a motion to strike the affidavit. (Doct. 40).

The defendant has submitted the affidavit of Eleanor Champion (docts. 37 & 47)[3], which includes a document that has been described as the "will" of Barton Champion. (Doct. 37, Ex. A). The plaintiff has moved to strike that document. (Doct. 30). The defendant has also submitted the affidavit of John Owens. (Doct. 36 and 48).[4] The plaintiff objected to the Owens affidavit at the hearing.

### A. The Burleson Affidavit

Gregory Burleson was the insurance agent who issued the Kemper life insurance policy involved in this case. In his affidavit, Burleson states:

> It was my understanding that William Barton Champion established this policy in order to comply with the Divorce Agreement which was to be entered into between himself and his wife, Eleanor P. Champion. At my conference with William Barton Champion, he specifically mentioned a Divorce Decree and his desire to fulfill the requirements regarding life insurance contained therein. We discussed several alternatives and he decided upon the [Kemper] policy which is discussed herein.

(Doct. 28, pp. 1-2). The defendant asserts that the affidavit is

---

[3] Document 47 is the original affidavit that was requested by the court.

[4] Document 48 is the original affidavit that was requested by the court.

15

extrinsic evidence due to be stricken because the Settlement Agreement in the divorce case is not ambiguous. In support of this position, she cites *Moore v. Pennsylvania Castle Energy Corporation*, 89 F.3d 791 (11th Cir. 1996).

In *Moore*, the court was presented the question of when evidence of an alleged oral agreement is admissible even though there is a written contract. The court stated:

> Under Alabama law, once the parties to a contract have reduced their agreement to writing, all prior statements, promises, and negotiations are merged into the resulting written document.... In the absence of fraud, mistake, or illegality, parol evidence is not admissible to explain, contradict, vary, add to, or subtract from the express terms of a complete and unambiguous written agreement....
>
> ....
>
> Under Alabama law, extrinsic evidence relating to the alleged 'true intent' of the parties is not admissible if the written document is clear and unambiguous. . . . However, resort to parol evidence is proper to show that the contract language contains a 'latent ambiguity.'... 'An ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.'... If a latent ambiguity exists parol evidence may be admitted for the purpose of explaining or clarifying the language revealed to be ambiguous, but not for the purpose of uncovering the parties' alleged 'true intent.'... As the Supreme Court of Alabama explained:
>
> > Such evidence is received, not for the purpose of importing into the writing an intention not

16

> expressed therein, but simply with the
> intention of elucidating the meaning of the
> words employed; and in its admission, the line
> which separates evidence which aids the
> *interpretation* of what is in the instrument,
> from direct evidence of intention independent
> of the instrument, must be kept steadily in
> view; the duty of the court being, to declare
> the meaning of what is written in the
> instrument, not of what was intended to be
> written.
>
> . . . .
>
> Whether a written contract is ambiguous is a
> question of law for the court....

*Moore*, 89 F.3d at 795-96 (citations omitted and emphasis in original).

The court has closely examined the Settlement Agreement in this matter and finds that it is not ambiguous. The agreement clearly delineates the parties' responsibilities: (1) Barton Champion was to pay a settlement of $563,042.00; (2) $330,000.00 of the settlement would be outstanding after the settlement date; (3) specific monthly installment terms were provided; (4) Barton Champion agreed to execute a promissory note for the outstanding sum; and, (5) the defendant was to execute a quitclaim deed transferring certain jointly owned property to Barton Champion. (Doct. 34, Ex. H, ¶ 7). Additionally, Barton Champion was to "maintain a life insurance policy" in the value of $300,000.00, he

17

was to name his estate as the "irrevocable beneficiary," and the defendant was to have an assignment on the policy to cover any outstanding debt on the property settlement. (*Id.*, ¶ 6).

The language of the agreement is plain. Barton Champion could have met the requirements of the agreement in different ways. He could have changed the beneficiary on the existing Kemper policy and then provided the defendant with an assignment; he could have obtained another $300,000.00 policy and named the estate as the irrevocable beneficiary and then provided an assignment to the defendant; or, he could have increased the value of the AIL policy, named the estate as the irrevocable beneficiary, and then provided an assignment to the defendant. He took none of these actions, however.[5]

As the Burleson affidavit is relevant in determining whether there is a latent ambiguity in the Settlement Agreement, the defendant's motion to strike is due to be denied in that respect. The affidavit establishes that, at some point, Barton Champion talked with Burleson regarding the use of the existing insurance

---

[5] The contract agreement waiver provision provides:

> "A modification or waiver of any of the provisions of this agreement by the parties hereto shall be effective only if made in writing and executed with the same formality as this agreement. The failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of any subsequent default of the same or similar nature."

(Doct. 34, Ex. H, ¶ 13)

18

policy to satisfy the Settlement Agreement. Barton Champion never took any action to ensure that the insurance policy would be so used, however. The policy was issued with Eleanor Champion as the beneficiary and it was never changed as required by the express terms of the Settlement Agreement. The affidavit does not demonstrate that there is any latent ambiguity in the express terms of the agreement. Barton Champion's earlier statement to Burleson does not make the clear language of the agreement ambiguous. To the extent that the affidavit of Burleson is submitted further to show Barton Champion's "true intentions," it is due to be stricken. Accordingly, the motion to strike is due to be granted in part and denied in part.

## B. The Barton Champion Document

The plaintiff objects to a document dated December 28, 1994, which purports to be the "last will and testament" of William Barton Champion and is attached to an affidavit prepared by the defendant. (Doct. 30). It provides:

I, William Barton Champion leave my last will and testament. Eleanor inherits everything. John Owens is to be the executor to help her. Champion supply [sic] stock is to be divided between Eleanor 75% and Larry 25%. $10,000 goes to Larry, Betty and Gail. $5,000 to Kevin, Brian, Craig, Wesley, Jason and Jodie. All insurance policies go to the beneficiaries.

(Doct. 37, Affidavit of Eleanor Champion, Ex. A). It is purportedly

19

signed by William Barton Champion. The plaintiff claims (1) that since the document was written prior to the divorce, it (the divorce) operates as a revocation of the document which makes provision for the defendant, (2) the document was not offered for probate, (3) the defendant did not file a contest at the time for the Petition for Letters of Administration, (4) the document has not been authenticated and the signature verified, and (5) it is immaterial.

To the extent this document is offered to establish that there is no ambiguity in the Settlement Agreement, it is of no value as there are no facts showing the circumstances under which it was prepared. Like the Burleson affidavit, it does little to assist the court in determining whether there is a latent ambiguity in the Settlement Agreement which was signed three months later. Premised on the lack of an ambiguity in the Settlement Agreement, further consideration of this affidavit and purported will to show Barton Champion's "true intention" is inappropriate. The plaintiff's motion to strike the purported will of Barton Champion attached thereto, is therefore due to be granted.

## C. The Owens Affidavit

Also before the court is the affidavit of John Owens, offered by the defendant. He was the accountant for Barton Champion and the

defendant. Owens states in his affidavit:

> 3. Prior to their divorce, I recall having a conversation with Barton Champion regarding the insurance provision contained in the Settlement Agreement. I had assisted Eleanor and Barton in preparing the Settlement Agreement and was therefore familiar with the Settlement Agreement.

> 4. I specifically recall explaining to Barton the importance of naming his Estate as the beneficiary of the $300,000 life policy that the Settlement Agreement required Barton to purchase. I also told him that it would be necessary for him to assign the policy to Eleanor to cover any outstanding debt owed under the Settlement Agreement at the time of his death.

> 5. Barton appeared to understand what I had told him about the insurance provision and what was required of him.

(Doct. 36). The plaintiff objected to this affidavit at the hearing. Paragraphs three and four are relevant to the issue of whether there is a latent ambiguity in the Settlement Agreement. Paragraph five is an objectionable conclusion and therefore it will not be considered. As noted already, after consideration of all the evidence, including the Owens affidavit, the court is convinced that the agreement does not contain a latent ambiguity. Paragraphs three and four show that Barton Champion was told of the consequences of his actions before he signed the agreement. The plaintiff does not contest these factual assertions. Accordingly, the court accepts them and will consider them to the extent they

21

are pertinent in determining whether there is a latent ambiguity.

After Barton Champion talked with Owens, he signed the agreement and did not follow the requirements therein. Owens' affidavit shows that Barton Champion was informed shortly before signing the agreement that he needed to execute an assignment. For whatever reason, he chose not to do so. This court will not speculate as to his reasons for inaction. What the court does find is that the totality of the evidence shows that the agreement is not ambiguous. Accordingly, the objection to the Owens affidavit is due to be granted in part and denied in part.[6]

## V. MOTIONS FOR SUMMARY JUDGMENT

### A. The Claims

Under the first count of the complaint, the plaintiff seeks to recover the taxes paid by the estate as a consequence of the distribution of insurance proceeds. The plaintiff asserts that the amount recoverable is $43,463.00. The defendant does not dispute that taxes paid by an estate on insurance that was paid to a beneficiary other than the estate are recoverable by the estate. The defendant acknowledges that if the court deems the payment of

---

[6] The affidavit of Christi Ayers was not objected to and was considered by the court in determining whether there was a latent ambiguity. Ayers worked with Barton Champion and according to the affidavit, Champion told her in December 1994 that he was purchasing a life insurance policy (Kemper) "to take care of Eleanor (the defendant) if something happened to [him]." (Doct. 45, p. 1).

the Kemper proceeds to be a distribution of insurance benefits rather than a satisfaction of the Settlement Agreement, payment will be due the estate in accordance with the amount of taxes attributable to the benefits. The defendant does dispute the tax amount due the plaintiff.

Under the second count of the complaint, the plaintiff demands that the defendant be required to transfer real estate in Cleburne County to the estate as provided in the Settlement Agreement. The defendant asserts that she stands ready to do so if and when the plaintiff pays the outstanding balance under the Settlement Agreement.

The first count of the counterclaim seeks to have the plaintiff to pay the money purportedly due and owing under the Settlement Agreement. The plaintiff asserts that the agreement has been satisfied by Kemper's payment of the insurance benefits.

The second count of the counterclaim requests that the plaintiff be required to pay the balance in the jointly held bank account at the time of Barton Champion's death. That amount is $1,463.52.

## B. Recovery of the Taxes Paid by the Estate on the Kemper Insurance Proceeds (Count One of the Complaint)

The first substantive question to be resolved in this dispute

is whether the money Kemper paid the defendant is merely a benefit paid under the insurance agreement or whether it is also satisfaction of the Settlement Agreement. As already stated, the Settlement Agreement is clear. Barton Champion was required to secure his debt to the defendant by doing four things: (1) executing a promissory note, (2) maintaining a life insurance policy in an amount of $300,000.00,[7] (3) naming his estate as the primary beneficiary, and (4) giving the defendant an assignment on the policy to cover any outstanding debt. The difficulties arose after execution of the agreement. Barton Champion did execute a promissory note in the amount of $330,000.00, and he did "maintain a life insurance policy in an amount of $300,000.00," but he did not name his estate as the beneficiary and he did not give the defendant an assignment on the policy. The situation was further complicated by the fact that the defendant did not challenge this failure until she filed a claim in the Probate Court of Cleburne County on April 15, 1996. Additionally, Barton Champion never demanded that the defendant execute the quitclaim deed transferring the Cleburne County property to him as provided in the Settlement Agreement.

---

[7] This amount could be reduced "as long as the minimum face amount shall always be equal to or greater than the balance on the property settlement." (Doct. 20, Ex. A, ¶ 6).

24

The court finds that the Kemper payment was not a satisfaction of the Settlement Agreement. It is undisputed that at the time of the settlement, Barton Champion owed the defendant $330,000.00. He executed the required promissory note that constitutes an enforceable obligation to pay the outstanding balance under the agreement. The existing insurance policy with Kemper is a separate contract that could have been modified by Barton Champion at any time prior to his death. Under his agreement with Kemper, he could have discontinued the payments on the contract, he could have named a different beneficiary or he could have changed the amount of the insurance benefits. The defendant had no enforceable contractual rights under the insurance contract. Her enforceable rights are enumerated in the Settlement Agreement.

The Kemper insurance agreement does not meet the requirements specified in the Settlement Agreement and, therefore, cannot now be used by the plaintiff to satisfy the terms and conditions of the Settlement Agreement. Even though it would have been easy for Barton Champion to change the terms of the Kemper beneficiary provisions, he never did so. Again, this court will not speculate as to his intent because the agreement is clear, specific, and controlling. Premised thereon, the court must conclude that the Kemper insurance benefits do not satisfy the terms of the

Settlement Agreement and the promissory note executed by Barton Champion.

Since the Kemper payment is a distribution of insurance benefits, the defendant is responsible for the taxes paid by the estate on the portion received by her. The plaintiff's motion for summary judgment on count one is due to be granted. This will necessitate a hearing to determine the amount of the plaintiff's recovery for the taxes paid.

## C. Cleburne County Real Estate

Count two of the plaintiff's complaint, which is the basis of the plaintiff's first motion for summary judgment, requests that the defendant be ordered to transfer ownership of the following to the estate:

A certain parcel of land beginning at the Southwest corner of the J.W. Hilley Farm; thence East 471 feet to the head of a small hollow; thence in a Northwesterly direction down said hollow 780 feet to the bridge on the Hilley Road; thence in a Northerly direction along the Hilley Road to the North line of said forty; thence West to Northwest corner of said forty; thence due South to point of beginning. All of the above-described property lying in Section Fifteen (15), Township Sixteen (16), Range Eleven (11) in Cleburne County, Alabama.

(Doct. 1, Ex. B). The defendant, in her "Response to Plaintiff's Motion for Summary Judgment," states that she "stands ready to execute said deed upon the Estate's performance of its obligations

<u>under the Agreement</u>." (Doct. 18, p. 3)(underlined in original).

Because the Settlement Agreement also required the defendant to immediately transfer the property to Barton Champion at the settlement, she must convey the property to the estate to fulfill her responsibility under the agreement. *See Charter Corporation v. Lawrence Construction and Development Co., Inc.,* 267 So. 2d 147 (Ala. 1972). Accordingly, the plaintiff's partial motion for summary judgment is due to be granted and the defendant is ordered to transfer the property to the estate.

## D. The Plaintiff Estate's Obligation Under the Settlement Agreement

As discussed above, Barton Champion did not satisfy his obligations under the Settlement Agreement. His responsibility to pay the defendant the outstanding balance under the agreement is evidenced by the enforceable obligation created by the promissory note. The plaintiff is responsible for the outstanding balance due and owing under the agreement and will be ordered to pay the same. The evidence demonstrates that at the time of Barton Champion's death, the outstanding balance was $301,666.61. (Doct. 34, Ex. J., pp.1, 3).[8]

---

[8] The probate court claim is for $301,666.61, plus interest. Attached to the claim is the promissory note and schedule of payments. It shows that $301,666.63 was outstanding. (Doct. 34, Ex. J., pp.1, 3)

### E. Joint Bank Account

The undisputed evidence before the court shows that at the time of Barton Champion's death, he and the defendant were joint owners of a bank account at the Colonial Bank of Heflin. When the account was closed by the executor of the estate in March 1996, it had a balance of $1,463.52. The defendant requests this sum from the plaintiff. The plaintiff does not dispute that the money is due and owing the defendant.[9] *See Code of Alabama 1975* § 5-5A-41. Accordingly, the plaintiff will be directed to pay said amount to the defendant.

### F. Interest, Costs, and Attorneys' Fees

The plaintiff additionally requests "such further relief which may be appropriate" and the defendant also seeks to recover interest and her costs. Determination of these matters, as well as the taxes due and owing, will be done in a hearing to be set by a separate order.

## VI.   CONCLUSION

Premised on the foregoing, the plaintiff's motion to strike (doct. 30) is due to be granted; the defendant's motion to strike

---

[9] At one point, the plaintiff asserted that the defendant had not offered any evidence in support of the claim. (Doct. 28, p.7). The defendant subsequently submitted an affidavit of the defendant providing that the account was jointly held at the time of Barton Champion's death and had a balance of $1,463.52. The affidavit was supported by a copy of a monthly statement evidencing the balance. (Doct. 37, p. 4). It was not contested.

(doct. 40) is due to be granted in part and denied in part; plaintiff's oral motion to strike the affidavit of Owens is due to be granted in part and denied in part; plaintiff's motion for summary judgment as to count two of the complaint is due to be granted (doct. 14); plaintiff's supplemental motion for summary judgment (doct. 28) is due to be granted as to count one of the complaint on the issue of liability and denied as to counts one and two of the counterclaim; and defendant's motion for summary judgment (doct. 29) is due to be granted as to counts one and two of the counterclaim on the issue of liability and due to be denied as to count one of the plaintiff's complaint. An order consistent with the findings and conclusions reflected in this Memorandum Opinion will be entered contemporaneously herewith.

The Clerk of the Court is directed to serve a copy of this Memorandum Opinion upon counsel for the parties.

DONE this the 13th day of May, 1999.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE

29